COMMONWEALTH vs. ROBERT P. BREESE, JR.

Middlesex. October 10, 1980. — November 28, 1980.

Present: GREANEY, ROSE, & KASS, JJ.

*Robbery. Assault. Joint Enterprise.*

At the trial of a defendant charged with armed robbery and armed assault
in a dwelling house, there was no error in the judge's supplemental in-
structions that it made no legal difference under the theory on which
the case was tried, whether the defendant himself when he entered the
dwelling was carrying the gun used to rob and assault the victim
where there was evidence that the defendant and his accomplice en-
tered the victim's room together and the defendant twice took the gun
from his accomplice and held it pointed at the victim. [758-760].

COMPLAINTS received and sworn to in the First Eastern
Middlesex Division of the District Court Department on
July 9, 1979.

In the Superior Court Department the cases were tried
before *Young, J.*

*Jeffrey N. Moxon* for the defendant.

*Pamela L. Hunt*, Assistant District Attorney, for the
Commonwealth.

ROSE, J. The defendant appeals from convictions of
armed robbery under G. L. c. 265, § 17, and of armed
assault in a dwelling house under G. L. c. 265, § 18A. He
assigns as error the trial judge's supplementary instruction,
given in response to a question submitted by the jury after
they had begun deliberations. The question follows:
"[U]pon entering the dwelling of Wayne Pascoal, does it
matter whether or not the defendant R. Breese was carrying
the gun?" Defense counsel agreed that "the short answer
[to the question] is no." Defendant complains for the first
time on appeal that the judge's response to the question

prejudiced him. The judge's response follows: "It does not make any legal difference, though as this case has been tried to you, in order to find Mr. Breese guilty of either or both of the charges, you must find that he was armed with a dangerous instrumentality and you may find that a gun is a dangerous instrumentality, used at some time during the course of the assault, as I have explained the word 'assault' to you." Since the defendant failed to object to the supplementary instructions (indeed, he expressed agreement with the charge), our inquiry is limited to whether the instructions created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 (1967). *Commonwealth* v. *Fitzgerald,* 376 Mass. 402, 405 & n.16 (1978). *Commonwealth* v. *Sheffield, post* 863, 864 (1980). This they did not do.

The Commonwealth's case may be summarized as follows: At about 2:30 A.M. on June 28, 1979, the victim was awakened in his motel room by a man, later identified as the defendant, demanding that the victim produce three ounces of cocaine. The defendant dragged the victim, who protested throughout that he knew nothing about any cocaine, to the bathroom while another man, later identified as Roal Sanchez, searched the bedroom. The defendant then dragged the victim back to the bed and searched the victim's wallet, taking $64.00 and two credit cards. After about three to five minutes, the defendant brought the victim to the middle of the room, took a gun from Sanchez and, with the gun pointed at the victim's head, demanded that the victim tell him where the cocaine and the keys to the victim's van were. After a brief interruption during which Sanchez held the gun, the defendant again took the gun and demanded that the victim disclose where the cocaine and keys were.

The defendant contends that the judge's supplementary instructions allowed the jury to convict the defendant regardless of whether he was carrying the gun when he *entered the victim's room* and that therefore the conviction

under G. L. c. 265, § 18A, for armed assault in a dwelling must be reversed.[1] The judge was correct in his supplemental instructions for, within the meaning of the statute, where a defendant jointly participates in the commission of an armed assault in a dwelling, he may be considered armed with a dangerous weapon when his accomplice was carrying the gun and the defendant was aware of that fact. See *Commonwealth* v. *Anderson*, 245 Mass. 177, 184-185 (1923); *Commonwealth* v. *Conroy*, 333 Mass. 751, 754-755 (1956). Cf. *Commonwealth* v. *Breen*, 357 Mass. 441, 448 (1970); *Commonwealth* v. *Flynn*, 362 Mass. 455, 479 (1972); *Commonwealth* v. *Drew*, 4 Mass. App. Ct. 30, 31-32 (1976). The Commonwealth's evidence showed that, while the defendant and Sanchez were in the victim's room, the defendant twice took the gun from Sanchez and held it on the victim. The jury could infer from this evidence that the defendant knew that Sanchez was carrying a gun at the time he and Sanchez entered the room. Therefore, the judge was correct when, in his supplemental charge, he instructed that it made no legal difference whether the defendant himself was carrying the gun when he entered the motel room.

The defendant also complains that because the Commonwealth did not show that the defendant was carrying the gun on his person when he took the $64.00 and the two credit cards from the victim's wallet, the judge's supplementary instructions prejudiced the defendant because they allowed the jury to convict the defendant for armed robbery even though the defendant was not carrying the gun at the time the property was taken. This argument must fail. As in the case of armed assault in a dwelling, where the defendant jointly participates in the commission of an armed robbery he may be considered armed when he has knowl-

[1] General Laws c. 265, § 18A, as amended by St. 1969, c. 473, provides in material part: "Whoever, being armed with a dangerous weapon, enters a dwelling house and while therein assaults another with intent to commit a felony shall be punished by imprisonment in the state prison for life, or for a term of not less than ten years."

edge that his accomplice is carrying a gun when the victim was put in fear and the property taken. See *Commonwealth* v. *Anderson, supra; Commonwealth* v. *Conroy, supra.* The victim of an armed robbery need not be aware of the existence of a dangerous weapon at the time of the taking. *Commonwealth* v. *Goldman,* 5 Mass. App. Ct. 635, 637 (1977). In any event, when the keys to the van were taken from the victim, the defendant was carrying the gun on his person; indeed, he was pointing it at the victim's head. The judge's instructions were proper.

*Judgments affirmed.*