## Commonwealth *vs.* O.C. Houston, Third.

No. 97-P-1948.

Plymouth. December 3, 1998. - February 24, 1999.

Present: Warner, C.J., Laurence, & Beck, JJ.

Further appellate review granted, 429 Mass. 1106 (1999).

*Rape. Evidence,* Prior conviction, Sexual conduct, Relevancy and materiality. *Practice, Criminal,* Impeachment by prior conviction, Prior conviction, Duplicative convictions. *Kidnapping.*

At the trial of rape and kidnapping indictments, the judge did not abuse his discretion in excluding from evidence the victim's prior prostitution-related convictions, which were not relevant to bias, motive, credibility, or consent. [379-383]

Where kidnapping provided the aggravating factor to support a conviction of aggravated rape, a conviction on an indictment for kidnapping was duplicative. [383]

Indictments found and returned in the Superior Court Department on February 26, 1996.

The cases were tried before *Patrick F. Brady,* J.

*David M. Skeels,* Committee for Public Counsel Services, for the defendant.

*John E. Bradley,* Assistant District Attorney, for the Commonwealth.

Warner, C.J. A Superior Court jury convicted the defendant of aggravated rape, kidnapping, and assault and battery.[1] He was sentenced to from seven to ten years at the Massachusetts Correctional Institution at Cedar Junction on the aggravated rape charge, and from three to five years on the kidnapping charge, to run concurrently. On appeal, the defendant claims that (1) the trial judge improperly prohibited him from impeaching the victim through reference to prior prostitution-related convictions; and (2) the kidnapping and aggravated rape convictions are duplicative.

---

[1]The assault and battery conviction was placed on file with the defendant's consent and is not before us.

The jury could have found the following facts beyond a reasonable doubt. In the early morning of July 2, 1995, the victim walked from her boyfriend's home in Brockton to a nearby gas station in order to purchase cigarettes. As the victim stopped to use an outside pay phone, the defendant pulled his vehicle alongside her. He then opened the vehicle's passenger side door and asked the victim if she wanted a ride. When the victim declined, the defendant reached out, grabbed her, and pulled her into his vehicle. As the defendant drove away, he showed the victim a gun and told her that he would think nothing of killing her if she attempted to scream or flee.

The defendant subsequently drove the victim to a secluded area of Brockton. There, the defendant parked the vehicle and ordered the victim to undress, and told her that he "owned" her. The defendant first forced the victim to perform oral sex on him. He then repeatedly raped the victim both vaginally and anally. When the victim screamed in pain, the defendant threatened to kill her if she did not stop. At one point, the victim noticed a picture of a young girl near the speedometer of the defendant's car. Eventually, the defendant grabbed the victim by the arm, dragged her out of the car, forced her over the hood of the car, and anally raped her again.

Finally, in an effort to pacify the defendant, the victim began to tell the defendant that he was "good." In response, the defendant stopped raping the victim and told her that she had just "turned [him] off." The defendant then forced the victim to beg him for her clothes. After he gave the victim her clothes, the defendant drove away.

Thereafter, the victim was picked up by a police officer and taken to a medical facility. She was crying, confused, and at times incoherent. One week after the attack, the victim was able to identify the defendant's picture from a series of photographs. Subsequently, a police officer observed a vehicle similar to that described by the victim, at the same gas station from which the victim had been abducted. Upon arresting the defendant, the officer noticed a picture of a young girl near the speedometer.

1. *Prior convictions.* Prior to trial, the Commonwealth filed a motion in limine to exclude the victim's prior convictions[2] and to allow, for impeachment purposes, evidence of the defendant's

[2]The subject of the motion in limine was the victim's prior convictions of five prostitution-related offenses, such as common night walker and sex for

prior conviction for indecent assault and battery. After discussion with counsel, the judge allowed the defendant to impeach the victim with only the cocaine possession and the G. L. c. 209A restraining order violation, and excluded the prostitution-related convictions. The judge also excluded the defendant's prior conviction of indecent assault and battery.

The defendant argues on appeal that he should have been allowed to impeach the victim by referring to her prior prostitution-related offenses. The defendant casts his argument broadly, but in essence rests upon his confrontation clause right to cross-examine witnesses effectively.

In *Commonwealth* v. *Joyce*, 382 Mass. 222 (1981), the Supreme Judicial Court reversed a conviction because the trial judge, acting pursuant to G. L. c. 233, § 21B (the so-called "rape shield" statute), prohibited the defendant from offering testimony that the victim had been charged with prostitution-related offenses. The court found that the victim's prior sexual conduct was related to her bias and motive to lie, and thus construed § 21B to permit such evidence.[3]

The court was careful to state as a general proposition that the fact that a woman engages in sex for hire is not directly relevant to her credibility. *Commonwealth* v. *Joyce*, 382 Mass. at 227. "The rule is well established that the fact that a female witness is a prostitute or keeps a house of ill fame is not admissible to impeach her." *Ibid.*, quoting from *Commonwealth* v. *Vandenhecke*, 248 Mass. 403, 404 (1924).

In the present case, there has been no argument that the evidence was admissible to show bias or motive. Thus, since acts of prostitution, standing alone, are not directly relevant either to credibility or the issue of consent, the victim's prior convictions could be seen as having been properly excluded on relevancy grounds. However, in *Joyce*, the court was careful to "express no view on the admissibility of a record of conviction of prostitution, or other sex-related crimes, to impeach the

a fee; one violation of a restraining order; and one conviction of possession of cocaine.

[3]In that case, a prostitution charge was pending against the victim, and the defendant's theory of the case was that the victim, after seeing the headlights of an approaching vehicle, ran naked and bleeding toward the vehicle and stated that the defendant had raped her, not only to avoid an additional arrest for prostitution, but also because she felt that the pending charge would be prosecuted if she were arrested again.

complaining witness's credibility." *Commonwealth* v. *Joyce*, 382 Mass. at 231 n.8. See *Commonwealth* v. *Allen*, 29 Mass. App. Ct. 373, 376 n.2 (1990) (also expressing no view on admissibility of prostitution convictions for impeachment purposes).

Taken as a whole, the court's opinion in *Joyce* may be seen as standing for two propositions. First, prior sexual conduct may be admissible for the purpose of establishing bias or motive to lie without running afoul of the rape shield statute. Second, although prostitution per se is not directly relevant to credibility, a *record of conviction* for prostitution may be admissible simply because it is a prior conviction, and therefore falls within the parameters of G. L. c. 233, § 21,[4] and is a matter within the trial judge's discretion. See *Commonwealth* v. *Maguire*, 392 Mass. 466, 470 (1984) (use of the word "may" in the statute means that the admission of evidence of a prior conviction is subject to the exercise of reviewable discretion by the trial judge). See also *Commonwealth* v. *Bucknam*, 20 Mass. App. Ct. 121, 123-124 (1985) (a judge's discretion under G. L. c. 233, § 21, is not limited to defendants, but applies to all witnesses). Therefore, the relevant question becomes whether the trial judge abused his discretion.

The judge, noting that the defendant was charged with a sexual offense, was properly concerned regarding the defendant's prior conviction for indecent assault and battery. As a result, he adopted a position where the defendant could freely testify to his version of the events on the night in question without fear of impeachment through a prior conviction, secure in the knowledge that the jury would never hear of his previous indecent assault and battery. At the same time, he could attack the victim's credibility through reference to her convictions

---

[4]General Laws c. 233, § 21, provides in part that "[t]he conviction of a witness of a crime may be shown to affect his credibility."

both of cocaine possession and of violation of a c. 209A order.[5,6] He would lose only the chance to "pile on" additional convictions (the prostitution offenses), which, as noted above, are no more probative of credibility than are any other convictions. All in all, this "sacrifice" was a small price to pay for the exclusion of his prior conviction, and the trial judge did not abuse his discretion. See *Commonwealth* v. *Goetzendanner*, 42 Mass. App. Ct. 637, 647 (1997) (trial judge has discretion to exclude rape victim's prior conviction for unnatural sexual acts, since conviction has little relevance either to victim's capacity for truthfulness or to the issue of her consent to sexual relations).

The defendant makes a rather anemic attempt to argue that the prostitution convictions were crucial because those convicted of prostitution-related offenses are inherently untrustworthy (indeed, even more so than those convicted of cocaine possession), and that, as a consequence, the defendant's ability to impeach the victim with her prior convictions of cocaine possession and the c. 209A violation was of little value. This argument is without merit.

Rather, it is apparent that the defendant sought to admit the prior convictions not to erode the victim's credibility, but to establish that she consented to the sexual conduct because she was engaging in an act of prostitution. Certainly, evidence of prior acts of prostitution would have aided the defendant's theory. But what the defendant sought was pure propensity evidence, i.e., because the victim engaged in acts of prostitution

[5]When he made his pretrial ruling, the judge was not aware that the victim had also been convicted for assault and battery. Nonetheless, defense counsel did question the victim regarding that conviction. However, before she answered, the judge called defense counsel and the prosecutor to side bar. When defense counsel resumed his cross-examination, he did not ask the victim any further questions regarding the assault and battery. In any event, the defendant rather curiously argues that he was not able to impeach the victim with the c. 209A order, since, when confronted with the certified copy of the conviction, the victim denied remembering it. However, the fact remains that the defendant did have the copy of the conviction. Moreover, the fact that the victim could not remember it in all likelihood further eroded her credibility in the eyes of the jury.

[6]This was an arrangement even more favorable to the defendant than that suggested by the dicta in *Commonwealth* v. *Knight*, 392 Mass. 192, 194 n.1 (1984), and *Commonwealth* v. *Maguire*, 392 Mass. 466, 470 n.9 (1984), wherein the court noted that a trial judge may condition exclusion of the defendant's prior convictions on the defendant's agreement not to use *any* of the Commonwealth witnesses' prior convictions for impeachment purposes.

in the past, she must have been doing so on the night in question. The evidence was not admissible for that purpose. *Commonwealth* v. *Joyce*, 382 Mass. at 231 ("we [do not] depart from the policy of the [rape shield] statute in viewing prostitution . . . as inadmissible on the issue of consent").

2. *Duplicative convictions.* The defendant's second argument is that since the jury found the defendant not guilty of assault with a dangerous weapon, the only basis for an aggravated rape conviction was the kidnapping indictment. Since, in essence, the kidnapping became a lesser included offense of aggravated rape, the kidnapping conviction should be dismissed as duplicative. The Commonwealth agrees with this argument, and joins the defendant in requesting that this court dismiss the kidnapping indictment.

General Laws c. 265, § 22(*a*), states, in essence, that rape may be "aggravated" if it is committed during the commission or attempted commission of, among other acts not relevant here, kidnapping and assault with a dangerous weapon. The defendant was convicted of aggravated rape, kidnapping, and assault and battery. He was acquitted of assault with a dangerous weapon. Since assault and battery is not one of the statutorily enumerated "aggravating factors," and the defendant was acquitted of assault with a dangerous weapon, the only possible aggravating factor of which the defendant was found guilty was kidnapping. Therefore, in this context, the kidnapping conviction was duplicative. Compare *Commonwealth* v. *Kickery*, 31 Mass. App. Ct. 720 (1991).

The judgment on the aggravated rape is affirmed. The judgment on the kidnapping charge is reversed, the verdict is set aside, and the indictment is dismissed.

*So ordered.*